## IN THE UNITED STATES DISTRICT COURT
### EASTERN DISTRICT OF ARKANSAS
### CENTRAL DIVISION

BRANDON SHAFFER                        *
ADC #123070                            *
                                       *
                    Plaintiff,         *
v.                                     *         No. 4:26-cv-00030-JJV
                                       *
ESTELLA BLAND, Provider,               *
Wellpath, Cummins Unit, *et al.*       *
                                       *
                    Defendants.        *

## MEMORANDUM AND ORDER

### I.    INTRODUCTION

Plaintiff Brandon Shaffer has filed a *pro se* Amended Complaint alleging Defendant Estella Bland failed to provide him with constitutionally adequate medical care for colon cancer while he was in the Cummins Unit, Defendant Lakita Davis failed to do the same while he was in the Omega Unit, and Defendant ADC Assistant Director Aundrea Culclager failed to take corrective action after reading his medical grievances.  (Doc. 5.)

Separate Defendants Bland and Davis have filed a Motion for Summary Judgment and Addendum arguing they are entitled to dismissal because Plaintiff failed to exhaust his available administrative remedies.  (Docs. 9-11, 27.)  Plaintiff has filed a Response.  (Doc. 30.)  After careful consideration and for the following reasons, I find the Motion should be granted as to Defendant Bland and denied as to Defendant Davis.

### II.    SUMMARY JUDGEMENT STANDARD

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.   DISCUSSION

### A.   Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

2

*Jones,* 549 U.S. at 218. Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility. *Id.* The only exception is if administrative remedies are unavailable. 42 U.S.C. § 1997e(a) (prisoners are only required to exhaust "available" administrative remedies). Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

### B.    Cummins Unit Grievance Procedure

Administrative Directive 19-34 (AD 19-34) contains the grievance procedure Plaintiff was required to use while in the Cummins Unit. (Doc. 11-3.) First, the inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident. (*Id.* at § IV(E)(1)). The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, <u>personnel involved</u> or witnesses, and how the policy or incident affected the inmate submitting the form." (*Id.* at § IV(E)(2)) (emphasis added.) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id*. § IV(C)(4)). And the grievance form reminds prisoners to include the "name of personnel involved." (*Id.* at 20.) Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance on the same form within three working days. (*Id.*

§ IV(E)(11) and (F)(1).) Third, an inmate who is dissatisfied with the response, or who does not timely receive a response, must appeal within five working days to the ADC Deputy Director. (*Id.* § IV(F)(9).) And that response ends the grievance process. (*Id.*)

### C.      Omega Unit Grievance Procedure

Omega Center Standard Operating Procedure 3.5.2 (OCSOP 3.5.2) is the grievance procedure Plaintiff was required to use while in the Omega Unit. (Doc. 11-4.)  First, an inmate must file a Complaint Form describing the problem. (*Id*. at § VII(A).)  However, unlike AD 19-34, there is no requirement to name specific individuals. (*Id*.)  Second, if the inmate is dissatisfied with the response, he or she must file a formal Grievance. (*Id.* at § VII(B).) Third, if the prisoner is dissatisfied with the response, he or she must file a Residential Appeal Form. (*Id*. § VIII(A).) And an appeal decision ends the process.

### D.      Plaintiff's Grievances

The Medical Grievance Supervisor says in her sworn declaration Plaintiff filed three relevant grievances: CMU-23-18, CMU-24-2, and OM-25-541. (Doc. 11-2 at 1-2.)  And Plaintiff does not challenge that assertion. (Doc. 30.)

#### 1.      CMU-23-18

In CMU-23-118, Plaintiff said Dr. Kerstein (a non-party) and unnamed "medical staff" failed to provide him with adequate medical care at the Cummins Unit for bloody stools, frequent bowel movements, and abdominal pain. (Doc. 11-2 at 3-5.)  Although this grievance was denied on the merits at all three steps, it did not properly exhaust any claims against Defendant Bland because Plaintiff did not specifically name her as he was required to do by AD 19-34 § VI(C)(4) and (E)(2). *See Townsend,* 898 F.3d 784 (ADC prisoner did not properly exhaust his claim against two of the three officers omitted from a grievance); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir.

4

2014) (improper exhaustion when the "ADC was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit). And Plaintiff's use of the catch-all phrase "medical staff" in this grievance and appeal was not sufficient to alert ADC officials of a potential claim against Defendant Bland. *See, e.g., Starr v. Moody*, No. 2:23-cv-0129-LPR-JTK, 2024 WL 4655360, at *3 (E.D. Ark. June 14, 2024), *rec. adopted,* 2024 WL 4652192 (E.D. Ark. Nov. 1, 2024); *Terry v. Arnett*, No. 2:20-CV-0066-DPM-PSH, 2021 WL 1772261 (E.D. Ark. Mar. 22, 2021), *rec. adopted*, 2021 WL 1762146 (E.D. Ark. May 4, 2021); *Emery v. Kelley*, No. 1:18-CV-98-DPM-PSH, 2019 WL 4447273 (E.D. Ark. Sept. 16, 2019). Thus, I find this grievance did not exhaust any claims against her.

### 2. CMU-24-2

In CMU-24-2, Plaintiff said nurse Buckley and Sergeant West (non-parties) failed to provide him with adequate medical care for bloody stools on December 26, 2023. (Doc. 11-2 at 6-7.) Plaintiff did not name Defendant Bland. The HSA denied the grievance because no abnormalities were found during the exam. (*Id*. at 7.) However, the HSA also said Plaintiff was seen by an unnamed "provider" on January 19, 2024, who changed Plaintiff's medication and ordered a colonoscopy, which was completed on January 22, 2024. (*Id.*) It is unclear if the unnamed provider was Defendant Bland. *See Hammett v. Cofield*, 681 F.3d 945, 947 (8th Cir. 2012) ("the PLRA's exhaustion requirement is satisfied if prison officials decide a procedurally flawed grievance on the merits"). But, even if she was, this grievance did not properly exhaust any claims against Defendant Bland because Plaintiff failed to appeal the decision to the ADC Deputy Director, as he was required to do by AD 19-34 § IV(F)(9). *See Woodford*, 548 U.S. at 90 (proper exhaustion means "using all steps that the agency holds out, and doing so properly"); *Porter v. Sturm*, 781 F.3d 448, 451-52 (8th Cir. 2015) (to properly exhaust administrative

remedies, a prisoner must appeal through the final stage); *Hammett,* 681 F.3d at 947 (same). Because Plaintiff has not argued or presented any evidence suggesting administrative remedies were unavailable to properly exhaust his claim against Defendant Bland, I conclude she is entitled to summary judgment.

### 3.      OM-25-541

On December 12, 2025, Plaintiff, who was in the Omega Unit, filed Complaint Form OM-25-541 alleging an unspecified "provider" refused to schedule ostomy reversal surgery recommended by the private physician treating his colon cancer. (Doc. 11-2 at 11.) Although he did not specifically name APRN Davis, OCSOP 3.5.2 did not require him to do so. The medical staff denied the grievance because there was no written consult in Plaintiff's medical records, and the prison medical "provider" determined reversal surgery was not warranted until Plaintiff completed chemotherapy. (*Id.*) On December 15, 2025, Plaintiff signed the Complaint Form indicating he had received the decision. (*Id.*) On December 16, 2025, Plaintiff filed a step-two Grievance saying Defendant Davis had not scheduled the recommended ostomy reversal surgery. (Doc. 11-2 at 9.) On January 12, 2026, the Medical Service Manager denied the grievance because Plaintiff was still receiving chemotherapy. (Doc. 27-1.) And, it is undisputed Plaintiff did not appeal that ruling.

Plaintiff says he did not do so because he never received the Medical Service Manager's decision. (Doc. 30.) Unlike AD 19-34, OCSOP 3.5.2 does <u>not</u> say a prisoner must or can proceed to the next step in the grievance process if he or she fails to receive a response in the allotted time. Instead, OCSOP 3.5.2 § VIII(A) says: "The grievant is entitled to appeal a grievance decision within five (5) working days after <u>receipt</u> of the decision in writing." (Doc. 11-4 at 4) (emphasis added.) Here, Plaintiff says he never received the decision, and there is no signature on the

response form or other evidence in the record contradicting his assertion. Further, the ADC Movement records provided by Defendants say Plaintiff was paroled from the Omega Center on January 29, 2026, making it possible that he could have been released before receiving a copy of the January 12, 2026 decision. (Doc. 11-1 at 1.) Because there is a genuine dispute of material fact here, I conclude Defendant Davis is not entitled to summary judgment at this time.

## IV.    CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1.      Defendants' Motion for Summary Judgment (Doc. 9) is GRANTED as to Defendant Bland and DENIED as to Defendant Davis.

2.      Plaintiff's claim against Defendant Bland is DISMISSED without prejudice.

3.      Plaintiff may proceed with his claim against Defendants Davis and Culclager.

4.      It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order would not be taken in good faith.

DATED this 18th day of May 2026.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE