**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION**

| | | |
|---|---|---|
| BRANDON SHAFFER | * | |
| ADC #123070 | * | |
| | * | |
| Plaintiff, | * | |
| v. | * | No. 4:26-cv-00030-JJV |
| | * | |
| ESTELLA BLAND, Provider, | * | |
| Wellpath, Cummins Unit, *et al.* | * | |
| | * | |
| Defendants. | * | |

**MEMORANDUM AND ORDER**

**I.    INTRODUCTION**

Plaintiff Brandon Shaffer says Defendant Lakita Davis failed to provide him with constitutionally adequate medical care for colon cancer while he was in the Omega Unit, and Defendant ADC Assistant Director Aundrea Culclager failed to take corrective action after reading his medical grievances about the medical care he was receiving for that condition at the Cummins and Omega Units.  (Doc. 5.)

Separate Defendant Culclager has filed a Motion for Summary Judgment arguing she is entitled to dismissal because Plaintiff failed to exhaust his available administrative remedies. (Docs. 37-39.)  Plaintiff has filed an "Objection" to the Motion, which I will treat as a Response. (Doc. 41.)  After careful consideration and for the following reasons, I find the Motion should be granted.

**II.    SUMMARY JUDGEMENT STANDARD**

Summary judgment is appropriate when the record, viewed in the light most favorable to the nonmoving party, demonstrates there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed. R. Civ. P. 56(a); *Celotex Corp.*

*v. Catrett,* 477 U.S. 317, 322-23 (1986). The moving party bears the initial burden of demonstrating the absence of a genuine dispute of material fact. *Celotex,* 477 U.S. at 323. Thereafter, the nonmoving party cannot rest on mere denials or allegations in the pleadings, but instead, must come forward with evidence supporting each element of the claim and demonstrating there is a genuine dispute of material fact for trial. *See* Fed R. Civ. P. 56(c); *Celotex*, 477 U.S at 322; *Holden v. Hirner*, 663 F.3d 336, 340 (8th Cir. 2011). In this regard, a factual dispute is "genuine" if "the evidence is sufficient to allow a reasonable jury to return a verdict for the non-moving party." *Greater St. Louis Constr. Laborers Welfare Fund v. B.F.W. Contracting, LLC,* 76 F.4th 753, 757 (8th Cir. 2023).

## III.   DISCUSSION

### A.   Exhaustion Requirement

The Prison Litigation Reform Act (PLRA) provides, in part, that: "No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The purposes of the exhaustion requirement include "allowing a prison to address complaints about the program it administers before being subjected to suit, reducing litigation to the extent complaints are satisfactorily resolved, and improving litigation that does occur by leading to the preparation of a useful record." *Jones v. Bock*, 549 U.S. 199, 219 (2007); *see also Woodford v. Ngo*, 548 U.S. 81, 89-91 (2006).

The PLRA requires inmates to fully and properly exhaust their administrative remedies as to each claim in the complaint. *Johnson v. Jones*, 340 F.3d 624, 627 (8th Cir. 2003); *Graves v. Norris*, 218 F.3d 884, 885 (8th Cir. 2000). Importantly, the Supreme Court has emphasized "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."

2

*Jones,* 549 U.S. at 218.  Thus, to satisfy the PLRA, a prisoner must fully and properly comply with the specific procedural requirements of the incarcerating facility.  *Id.*  The only exception is if administrative remedies are unavailable.  42 U.S.C. § 1997e(a) (prisoners are only required to exhaust "available" administrative remedies).  Administrative remedies are "unavailable" if, for instance: (1) the grievance procedure "operates as a simple dead end;" (2) the procedure is "so opaque that it becomes, practically speaking, incapable of use;" or (3) "prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation."  *Ross v. Blake*, 578 U.S. 632, 642 (2016); *see also Townsend v. Murphy*, 898 F.3d 780, 783 (8th Cir. 2018).

## B.    Cummins Unit Grievances

Plaintiff's claim against former Defendant Bland for the medical care he received while in the Cummins Unit has been dismissed due to a lack of exhaustion. (Doc. 31).  However, his corrective inaction claim against Defendant Culclager arising from the care he received at the Cummins Unit continues.

Administrative Directive 19-34 (AD 19-34) contains the three-step grievance procedure Plaintiff was required to use while in the Cummins Unit.  (Doc. 37-2.)   First, an inmate must attempt informal resolution by submitting a Unit Level Grievance Form to a designated problem solver within fifteen days of the incident.  (*Id.* at § IV(E)(1)).  The form must include "a brief statement that is specific as to the substance of the issue or complaint to include the date, place, personnel involved or witnesses, and how the policy or incident affected the inmate submitting the form."   (*Id.* at § IV(E)(2)) (emphasis added.) Inmates are cautioned a "[g]rievance must specifically name each individual involved in order that a proper investigation and response may be completed" and an inmate who "fails to name all parties during the grievance process may have

his or her lawsuit or claim dismissed by the court or commission for failure to exhaust against all parties." (*Id*. § IV(C)(4)). And the grievance form reminds prisoners to include the "name of personnel involved." (*Id.* at 20.) Second, if informal resolution is unsuccessful or the problem solver does not timely respond, the inmate must file a formal grievance on the same form within three working days. (*Id.* § IV(E)(11) and (F)(1).) Third, an inmate who is dissatisfied with the response, or who does not timely receive a response, must appeal within five working days to the ADC Deputy Director. (*Id*. § IV(F)(9).) And that response ends the grievance process. (*Id*.)

It is undisputed Plaintiff submitted two grievances while at the Cummins Unit regarding his medical care: CMU-23-18 and CMU-24-2. (Docs. 37-1, 37-3, 37-4, 37-5.) Plaintiff did not specifically name Defendant Culclager, as required by AD 19-34 § VI(C)(4) and (E)(2), in either grievance. *See Townsend,* 898 F.3d at 784 (ADC prisoner did not properly exhaust his claim against two of the three officers omitted from a grievance); *Burns v. Eaton*, 752 F.3d 1136, 1141 (8th Cir. 2014) (improper exhaustion when the "ADC was not asked to evaluate the conduct" of the defendant "or the distinct § 1983 claims first asserted" in the lawsuit). The fact that Defendant Culclager denied CMU-23-18 (Doc. 37-4 at 5) was not enough. *See Champion v. Akins*, Case No. 12-2467, 2013 WL 656797 (8th Cir. Feb. 24, 2013); *Addison v. Brawley*, No. 2:23-cv-00191-JM-JJV, 2024 WL 1098025 (E.D. Ark. Feb. 21, 2024), *rec. adopted*, 2024 WL 1096880 (E.D. Ark. Mar. 13, 2024). Instead, to properly exhaust a corrective inaction claim against her, Plaintiff was required to file a grievance specifically naming her and raising his corrective inaction claim against her. *See Townsend*, 898 F.3d at 784; *Burns*, 752 F.3d at 1141. Finally, Plaintiff did not appeal the denial of CMU-24-2 (Doc. 37-5) to its final stage, as required by AD 19-34 § IV(F)(9). *See Woodford*, 548 U.S. at 90 (proper exhaustion means "using all steps that the agency holds out, and doing so properly"); *Porter v. Sturm*, 781 F.3d 448, 451-52 (8th Cir. 2015) (to properly exhaust

4

administrative remedies, a prisoner must appeal through the final stage).  Accordingly, I conclude neither grievance properly exhausted Plaintiff's corrective inaction claim against Defendant Culclager.

### C.    Omega Unit Grievance Procedure

Omega Center Standard Operating Procedure 3.5.2 (OCSOP 3.5.2) is the grievance procedure Plaintiff was required to use while in the Omega Unit. (Doc. 37-7.)  First, an inmate must file a Complaint Form that is "legible, specific, and to the point."  (*Id*. at § VII(A) and (H).)  However, unlike AD 19-34, there is no requirement to name specific individuals.  (*Id*.)  Second, if the inmate is dissatisfied with the response, he or she must file a formal Grievance to the Health Services Administrator.  (*Id.* at § VII(B).)  Third, if the prisoner is dissatisfied with the response, he or she must file a Residential Appeal Form.  (*Id*. § VIII(A).)  And an appeal decision ends the process.

It is undisputed OM-25-541 is the only grievance Plaintiff filed while in the Omega Unit. (Docs. 37-1, 37-3.)  In that grievance, Plaintiff said Defendant Nurse Davis refused to schedule his ostomy reversal surgery as recommended by his private physician.  (Doc. 37-6.)  As previously mentioned, OCSOP 3.5.2 did not require Plaintiff to name Defendant Culclager.  But it <u>did</u> require him to be "specific" about the nature of his claims.  And Plaintiff did not say any grievance responders were failing to properly investigate or take appropriate corrective action in response to his medical grievances.  Accordingly, I conclude OM-25-541 did not properly exhaust Plaintiff's corrective inaction claim against Defendant Culclager.

Finally, Plaintiff has not argued or presented any evidence suggesting administrative remedies were unavailable to him to properly exhaust his corrective inaction claim against Defendant Culclager.  Accordingly, I conclude she is entitled to summary judgment.  *See Jones,*

549 U.S. at 211 ("There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court").

## IV.  CONCLUSION

IT IS, THEREFORE, ORDERED THAT:

1.  Defendant Culclager's Motion for Summary Judgment (Doc. 37) is GRANTED, and she is DISMISSED without prejudice as a party to this lawsuit.

2.  It is certified, pursuant to 28 U.S.C. § 1915(a)(3), that an *in forma pauperis* appeal from this Memorandum and Order would not be taken in good faith.

DATED this 24th day of July 2026.

_____
JOE J. VOLPE
UNITED STATES MAGISTRATE JUDGE